IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ALEXANDER HUNTER
COCHRAN                       )
                              ) No. 18-252
    v.                        )

NANCY A. BERRYHILL,
COMMISSIONER OF SOCIAL
SECURITY

# OPINION AND ORDER

## SYNOPSIS

Plaintiff filed an application for supplemental security income benefits, alleging mental and physical impairments, including Hirschprung disease,[1] depression, and anxiety. His application was denied initially, and upon video hearing on May 10, 2017 by an Administrative Law Judge ("ALJ"). At the hearing, Plaintiff's grandmother appeared as his representative. The Appeals Council denied Plaintiff's request for review. Before the Court are the parties' Cross-Motions for Summary Judgment. For the following reasons, Plaintiff's Motion will be granted and Defendant's denied, and this matter remanded for further proceedings.

## OPINION

### I.   STANDARD OF REVIEW

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g) 6 and 1383(c)(3) 7. Section 405(g) permits a district court to review

---

[1] According to the National Institute of Diabetes and Digestive and Kidney Diseases, "Hirschprung Disease is a birth defect in which nerve cells are missing at the end of a child's bowel. Normally, the bowel contains many nerve cells all along its length that control how the bowel works. When the bowel is missing nerve cells, it does not work well. This damage causes blockages in the bowel because the stool does not move through the bowel normally." www.niddk.nih.gov. Dr. Afra, who performed a physical consultative examination of Plaintiff, stated, "In 5% of the cases, entire colon is affected. Stomach and esophagus may be affected too…I believe the claimant belongs to the 5% of patients with Hirschprung disease whose entire colon is affected."

1

the transcripts and records upon which a determination of the Commissioner is based, and the court will review the record as a whole. See 5 U.S.C. §706. When reviewing a decision, the district court's role is limited to determining whether the record contains substantial evidence to support an ALJ's findings of fact. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)). Substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620, 86 S. Ct. 1018, 16 L. Ed. 2d 131 (1966). If the ALJ's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); Richardson, 402 U.S. at 390.

A district court cannot conduct a de novo review of the Commissioner's decision, or re-weigh the evidence of record; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered. Palmer v. Apfel, 995 F.Supp. 549, 552 (E.D. Pa. 1998); S.E.C. v. Chenery Corp., 332 U.S. 194, 196 - 97, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947). Otherwise stated, "I may not weigh the evidence or substitute my own conclusion for that of the ALJ. I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently." Brunson v. Astrue, No. No. 10-6540, 2011 U.S. Dist. LEXIS 55457 (E.D. Pa. Apr. 14, 2011) (citations omitted).

**II.     THE PARTIES' MOTIONS**

Plaintiff raises overlapping challenges in this appeal. The first regards the adequacy of his representation at the hearing, and the second regards the ALJ's obligation to develop the record. These arguments raise various questions, several of which are undeveloped within this Circuit, and all of which relate to the ALJ's duties when a claimant appears with a non-attorney representative.

**A. WAIVER**

Plaintiff first contends that the ALJ erred when she failed to obtain a knowing and intelligent waiver of the right to counsel. The Defendant cites to HALLEX, which is not binding on this Court, in support of its assertion that the ALJ need obtain a waiver only if a claimant is "unrepresented."[2]

A claimant has a statutory and regulatory right to counsel at a social security hearing. Phifer v. Comm'r of Soc. Sec., 84 F. App'x 189, 190 (3d Cir. 2003). The ALJ's duties are relatively clear when a claimant appears without any representation at all. In that case, "[t]he claimant must be provided with notice of his right to counsel and can waive this right as long as such waiver is knowing and intelligent." Vivaritas v. Comm'r of Soc. Sec., 264 F. App'x 155, 157 (3d Cir. 2008). If waiver of counsel was ineffective, remand is proper if clear prejudice or

---

[2] Defendant also implies that the written notice sent to Plaintiff, and Plaintiff's subsequent appointment of his grandmother, provides grounds to reject Plaintiff's argument. My sister Court, in the case of a wholly unrepresented plaintiff and in a different context, suggested that written notice was insufficient because "the ALJ failed to at least ask [claimant] if she had indeed received the written notices from Social Security Administration concerning the benefits of having an attorney represent her at the administrative hearing, and if so, whether she understood their contents." Nevins v. Commisioner of Soc. Sec., No. 16-5765, 2017 U.S. Dist. LEXIS 86225, at *7 (D.N.J. June 5, 2017). I do not propose that such a colloquy is required in the case of a non-attorney representative, although it certainly could prove effective and useful. Although Plaintiff cursorily states that he "was not given sufficient notice of the right to counsel," that argument is undeveloped. Under all of the circumstances of this particular case, however, assuming that Plaintiff received sufficient written notice of the right to representation does not alone dispose of Plaintiff's claims.

3

unfairness at the hearing resulted. Capoferri v. Harris, 501 F. Supp. 32, 38 (E.D. Pa. 1980) aff'd, 649 F.2d 858 (3d Cir. 1981).

Our Court of Appeals has not addressed whether a waiver is required when a claimant is represented by a non-attorney. Within some other Circuits, such as the Seventh, an ALJ must secure a waiver of the right to counsel when a claimant appears with a non-attorney representative. See, e.g., Beth v. Astrue, 494 F. Supp. 2d 979 (E.D. Wis. 2007); Goo v. Colvin, No. 15-5858, 2016 U.S. Dist. LEXIS 83540, at *13 (N.D. Ill. June 28, 2016).[3] In Sessaman v. Colvin, No. 14-1086, 2015 U.S. Dist. LEXIS 91834, at *16 (M.D. Pa. June 25, 2015), however, my sister Court determined that the ALJ need not obtain a waiver of the right to counsel, when a plaintiff exercised that right by choosing a non-attorney representative. At this juncture, I decline to depart from the approach taken in Sessaman. Accordingly, I find no error in the ALJ's failure to obtain a waiver.

### B. QUALIFICATIONS OF REPRESENTATIVE

Plaintiff also challenges the ALJ's failure to inquire as to his grandmother's qualifications to serve as representative. The applicable regulation provides that a non-attorney representative must be someone who is "capable of giving valuable help…in connection with the claim," and is "generally known to have a good character and reputation." 20 C.F.R. § 404.1705(b). Section 404.1705 further states that "we may refuse to recognize" a representative who does not meet the stated requirements. These provisions suggest, at the very least, some minimal level of oversight or inquiry on the part of Defendant and the ALJ; otherwise, they are utterly meaningless. In Sessaman, for example, the Court noted that "the ALJ properly identified

---

[3] Defendant cites to Norden v. Barnhart, 77 F. App'x 221, 223 (5th Cir. 2003), which does not support Defendant's position: in that case, unlike here, the Court observed that claimant had received written notice of the right to representation; the ALJ again informed him of the right at the hearing; and he waived the right and requested that his grandmother represent him at the hearing.

4

[plaintiff's representative, a paralegal] as a qualified non-attorney that satisfies Plaintiff's rights under the statutory and regulatory scheme." Sessaman, 2015 U.S. Dist. LEXIS at *16.

At the present Plaintiff's hearing, the ALJ introduced herself and the matter at bar. She then stated, "The Claimant is present and is represented by ----." Plaintiff's grandmother responded, "His grandmother, Pauletta MacPhedran." Other than these two statements, Plaintiff's representation was not addressed in any way, by any person present at the hearing.

After Ms. MacPhedran was identified, the ALJ's first exchange with her was as follows:

ALJ: Ma'am, have you and the Claimant had an opportunity to review the file with proposed Exhibits prior to this hearing?

REP: Yes.

ALJ: Okay. Ma'am, I need you to be able to respond without looking at your daughter. Have you reviewed them?

REP: Yes.

The ALJ then proceeded to question Plaintiff. At one point, the ALJ questioned Plaintiff about his marijuana use, and Ms. MacPhedran intervened.

ALJ: What does extremely heavy user mean?

ANS: Multiple times a day.

REP: Did you have a medical card?

CLMT: With just money my mother would give me.

ALJ: Ma'am—

REP: Yes?

ALJ: -- did you ask him a question?

REP: I—

ALJ: You will have an opportunity to question him when—

5

REP: Sorry.

ALJ: --I'm done. So make a note of those questions so you make sure you remember to ask.

When the ALJ concluded questioning, the following exchange occurred:

ALJ: Okay, ma'am, your witness.

REP: Yes?

ALJ: I'm done questioning.

REP: Oh.

ALJ: You have a right to question.

Thereafter, Ms. MacPhedran questioned Plaintiff about his condition and work history, as well as his reasons for leaving both high school and college. Then, the following exchange occurred:

REP: Okay. Honey, I don't think you get across how much you hurt. I really don't.

ALJ: Ma'am, do you have any further questions?

REP: Not for him. Am I allowed—

ALJ: Okay.

REP: --to make any comments?

ALJ: Not at this point, ma'am.

At that point, the vocational expert ("VE") testified. Ms. MacPhedran asked the VE one question, regarding whether the fact that Plaintiff might be able to work only 20 hours a week would impact the VE's testimony. When invited to make a closing statement, Ms. MacPhedran described the difficulties Plaintiff faced. "She said, "he's tried everything he could. He really has. He's a very good kid. That's all I have to say."

As discussed supra, the parameters of an ALJ's duties regarding the qualifications of a non-attorney representative have not been clearly drawn within this Circuit,[4] and it is unnecessary to attempt to draw them today. "[T]his court retains the right to scrutinize the entire record in considering whether the Commissioner's decision was in fact supported by … substantial evidence." Emery v. Apfel, 356 F. Supp. 2d 530, 532 (E.D. Pa. 2005). Under the particular circumstances of this case, which include record indications that Ms. MacPhedran may have been unfamiliar with applicable procedures, those parameters likely involve something more than the total inaction at issue. The fact that Ms. Macphedran engaged with the ALJ and witnesses during the hearing does not alter the scenario. While not grounds for remand standing alone, Plaintiff's representation, and the ALJ's approach thereto, are part and parcel of the record under consideration.

### C. DUTY TO DEVELOP THE RECORD

Next, Plaintiff argues that the ALJ had a heightened duty to develop the record, because he was "unrepresented."

Questions surrounding the adequacy of representation and the ALJ's duty to develop the record are intertwined. In all cases, the ALJ has a duty to develop a full and fair record, but the duty is "most acute" if the claimant is unrepresented. Botch v. Berryhill, No. 17-4586, 2019 U.S. Dist. LEXIS 88670, at *5 (E.D. Pa. May 28, 2019); cf. Carmichael v. Barnhart, 104 F. App'x 803, 805 (3d Cir. 2004). Accordingly, the ALJ's duty is heightened if a claimant is pro se.

---

[4] Courts have taken different approaches to this issue. By way of example, compare Schultz v. Sullivan, NO. 91 - 1525, 1993 U.S. Dist. LEXIS 2558, at *23 (N.D. Ill. Feb. 19, 1993) (ALJ has affirmative duty to inquire into qualifications of non-attorney representative) with Doner v. Comm'r of Soc. Sec., No. 16-0883, 2017 U.S. Dist. LEXIS 115431, at *19 (N.D.N.Y. July 24, 2017) (no such duty exists). It would seem preferable that an ALJ take measures, at the hearing, to ensure that a plaintiff represented by a non-attorney understands his representation options and wishes to proceed, and/or engage in even a de minimis inquiry regarding the non-attorney's qualifications to serve as representative. While no such duty has been imposed in this Circuit, and I do not announce one today, such measures would both serve the interests of justice and clarify the record for appeal purposes.

Wooten v. Astrue, No. 11-7592, 2012 U.S. Dist. LEXIS 178413, at *8 (E.D. Pa. Dec. 17, 2012). In that case, the ALJ "must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003). On the other end of the spectrum, if a claimant is represented by an attorney, an ALJ is entitled to assume that a claimant represented by counsel has put forth his strongest case. Duva v. Berryhill, No. 18-943, 2019 U.S. Dist. LEXIS 108292, at *9 n.2 (D.N.J. June 27, 2019). Further, the presence of "independently significant factors" – such as the suggestion of a mental impairment, or records missing from a treating physician – may also serve to impose a heightened duty on an ALJ. Rosa v. Colvin, 956 F. Supp. 2d 617, 624 (E.D. Pa. 2013).

"[I]t is not entirely clear how the ALJ's duty to develop the record applies when a claimant has a non-attorney representative." Lewis v. Colvin, No. 12-6186, 2014 U.S. Dist. LEXIS 107288, at *14-15 (E.D. Pa. May 22, 2014). It appears that at least one Court within this Circuit has recognized that an ALJ's heightened duty to develop the record applies in the case of a non-attorney representative. Id. (citing Vaughn v. Astrue, No. 09-3009, 2010 U.S. Dist. Lexis 39031 (E.D. Pa. Apr. 19, 2010)).[5] A heightened duty, of course, requires the ALJ to "assume a more active role" in developing the record. Cartagena v. Comm'r of Soc. Sec., No. 10-05712, 2012 U.S. Dist. LEXIS 49779, at *4 (D.N.J. Apr. 9, 2012). Again, however, the ALJ's duty to develop the record – whether heightened or not – remains extant. At the very least, to quote

---

[5] In Vaughn, plaintiff was represented by a paralegal from Community Legal Services. Lewis, 2014 U.S. Dist. LEXIS 107288, at *14. Several courts within other Circuits have held in accord. E.g., Labarr v. Colvin, No. 14-01086, 2016 U.S. Dist. LEXIS 151779, at *39 (N.D.N.Y. Mar. 21, 2016); Leutung v. Comm'r of Soc. Sec., No. 17-6626, 2019 U.S. Dist. LEXIS 52291, at *6 (W.D.N.Y. Mar. 27, 2019); Williams v. Colvin, No. 14-112-BG, 2015 U.S. Dist. LEXIS 62642, at *12 (N.D. Tex. Apr. 20, 2015). "[W]hen a plaintiff (or potentially a plaintiff's representative) is unfamiliar with hearing procedures, the ALJ must 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts' in order to satisfy her heightened duty." Presley v. Colvin, No. 11-00103, 2013 U.S. Dist. LEXIS 132885, at *14 (M.D. Tenn. Sep. 16, 2013).

Defendant, "the ALJ's duty is to eliminate evidentiary gaps that prejudice claimant's case…."
Defendant's Brief, p. 13.

Here, at step two of the sequential analysis, the ALJ found that Plaintiff had severe impairments of Hirschprung disease, repeated pneumothorax, migraine headaches, depression, bipolar disorder, and anxiety. The ALJ arrived at a residual functional capacity ("RFC") of light work, except "no more than moderate concentrated exposure to noise. He is never capable of concentrated exposure to sunshine or bright or flickering lights such as would be experienced in welding or cutting metals. He is limited to performing work with simple tasks, instructions, and decisions…he is limited to no contact with the general public."

The ALJ noted that Plaintiff's "symptoms have been relatively stable the last few years," and that "despite [Plaintiff's] testimony of persistent symptoms and active treatment,…he has not received any active treatment for his physical impairments since September 2015." Plaintiff, however, draws the Court's attention to an unattributed, unsigned handwritten note appended to a treatment plan signed by Dr. Flamini, of Neurology Associates of Erie on September 29, 2015. The note states, "Still an active patient of Dr. Flamini's. Seen every 6 months. Last appointment April, 2017." The record contains no pertinent records from Dr. Flamini beyond the September, 2015 visit.[6] The ALJ made no inquiry regarding the note. Moreover, Plaintiff testified to continuing and chronic headaches and abdominal issues.

I note, too, that Plaintiff asserted that he was prescribed medical marijuana, but no pertinent records are present. Plaintiff testified that he moved from California two years prior to the hearing, which was held on May 10, 2017. His medical marijuana prescription, it appears,

---

[6] Plaintiff's marijuana use arose in the context of a discussion about his consultative exams. State agency consultative exams, one physical and one psychological, were performed in March of 2015. At the hearing, however, Plaintiff initially had no recollection of the exams occurring and did not recognize the names of the physicians.

occurred when he lived in California. Upon questioning, he indicated that he did not have the pertinent medical records, and did "not know" which doctor gave him the medical card. The ALJ, in her opinion, observed that Plaintiff had a history of substance abuse, without mention of its possible medical nature. At the hearing, the ALJ indicated that the record contained a reference made to recreational drug usage, and stated, "And I'm asking you about it because when I prepared your case, I saw that and made a consideration." Although Ms. MacPhedran asked Plaintiff whether he would be able to find his medical card -- Plaintiff responded, "I don't think I could be able to find it…It was just a little plastic, flimsy card"-- the record reflects no additional follow up on this issue.

In addition to these potential evidentiary gaps, the ALJ's opinion contains possible mischaracterizations of the record. The ALJ noted that Plaintiff's August 2014 MRI showed "no evidence of" various problems. She did not, however, mention that an August 20, 2014 MRI showed findings of "abnormal stasis of the cortical drainage veins…along the frontal, parietal and occipital lobes," and clinical correlation was recommended. The ALJ's decision states that Plaintiff "completed high school in normal classes." Although the record reflects that he did not attend special education classes, Plaintiff testified that "I didn't actually finish [high school], I went to a cyber school." Finally, the ALJ states that Plaintiff had not received any active treatment for his Hirschprung disease since September 2014. Medical records from St. Vincent Health Care, however, note an arrival date of October 6, 2014, with a primary diagnosis of upper abdominal pain.[7]

As an aside, I also note the dearth of discussion regarding the impact of Plaintiff's physical impairments on his ability to maintain regular attendance in the workplace. Plaintiff

---

[7] This record is included with Ex. 11F, Progress Notes from Psychological Health Services, which Plaintiff submitted prior to the ALJ hearing but after the initial disability determination.

testified that attendance issues stemming from illness brought his attempts at work to an end. The record contained a letter to that effect from his most recent manager, who praised Plaintiff's performance at his part-time cashier job, other than the absences due to illness that resulted in his termination.[8] Plaintiff testified that he is "Too nauseous and [has] too bad of headaches every other day to be consistent with anything." Plaintiff also testified that attendance issues, stemming from his illness, caused him to leave college, and that he left regular high school, and enrolled in cyber school, because he "was so nauseous and missed so much school," "two, three days a week." The only potentially pertinent medical opinion of record is a 2015 consultative examination report from Dr. Afra, in which he credited Plaintiff's reports of daily abdominal pain and nausea. Indeed, Dr. Afra deemed Plaintiff "very credible." Dr. Afra's functional assessment, however, did not reflect a category that would address the effect of Plaintiff's Hirschprung disease on his ability to work a certain number of hours or days, or the need for breaks.[9] In the overall context of this case, involving an accepted diagnosis of Hirschprung and VE testimony indicating that attendance issues could be dispositive of disability, the omission of any reference to or conclusion regarding those issues is troubling.

Defendant argues that the record was sufficient to allow the ALJ to make findings, and that Defendant could have asked for assistance if he believed that records were missing. Defendant objects that an ALJ is not required to search out all relevant evidence or go to inordinate lengths to develop a claimant's case, as this would shift the burden of proof to Defendant. Certainly, however, expecting some minimal step to address red flags arising in the

---

[8] The ALJ merely stated that Plaintiff "stopped work due to his physical impairments."
[9] The ALJ did query the VE about whether there were any jobs in the national economy if she added restrictions relating to additional breaks and time being off task or absent. The VE responded that no jobs would be available. Plaintiff's representative also asked the VE a single question, which related to how his opinion would change if Plaintiff was unable to predict when he would be able to work. The VE answered that the identified jobs were full-time, 40-hour-per-week jobs. I note that the ability to maintain a schedule was addressed solely in the context of Plaintiff's mental consultative exam by Dr. Venter, who found no restrictions.

11

record or at the hearing – such as a question or two regarding potentially missing medical records – does not impose such a burden on the ALJ or shift it to Defendant. Defendant also points out that counsel did not submit additional records to the Appeals Council, and it is not clear that the records exist. Defendant's points are well taken. It is certainly possible that the issues outlined <u>supra</u> might have been or prove to be unimpactful or unavailable, and counsel should have spoken to this issue. Nonetheless, Defendant does not point to any precedent suggesting that counsel's failure to do so forecloses further consideration under the present circumstances. Under these circumstances, concerns surrounding the ALJ's duty and the state of the record below must be addressed.

**CONCLUSION**

In this rather unusual case, this Court is unable to conclude that the ALJ's decision is supported by substantial evidence. Under all of the circumstances, including questions surrounding Plaintiff's representation, potential gaps in or mischaracterizations in the record or discussion, remand is warranted to ensure full and fair development of the record. The ALJ may conduct any proceedings deemed appropriate on remand, including a hearing. An appropriate Order follows.

BY THE COURT:

*Donetta F. Ambrose*

Donetta W. Ambrose

Senior Judge, U.S. District Court

Dated: August 29, 2019

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ALEXANDER HUNTER
COCHRAN  )
 ) No. 18-252
    v.

NANCY A. BERRYHILL,
COMMISSIONER OF SOCIAL
SECURITY

## ORDER

AND NOW, this 29th day of January, it is hereby ORDERED, ADJUDGED, and DECREED that Plaintiff's Motion is GRANTED and Defendant's DENIED. This matter is remanded for further proceedings consistent with the foregoing Opinion.

                                            BY THE COURT:

                                            _/s/ Donetta W. Ambrose_

                                            Donetta W. Ambrose

                                            Senior Judge, U.S. District Court